## 19312

The STATE, Respondent, v. Henry CARPENTER, Appellant.

(184 S. E. (2d) 715)

*Marshall W. Abercrombie, Esq.* of Laurens, *for Appellant,* cites:

*Messrs. John H. Nolen, Sol., and Milton A. Smith, Asst. Sol., for Respondent,* cite:

November 8, 1971.

Bussey, Justice.

At approximately 10 o'clock on the night of March 30, 1970, at a Minute Saver Food Store in Spartanburg, Mrs. A., a twenty-three year old married woman, alone and in charge of said store was the victim of a robbery by two young Negroes, and was also brutally beaten and raped by one of them. Appellant Carpenter was convicted of rape by a jury, with a recommendation of mercy. The victim identified Carpenter as her attacker through viewing photographs; in a police line up; and in the court room. Pretrial motions were made to quash the indictment and to suppress the identification testimony of the victim, on numerous

stated grounds, both motions being overruled. Some of the facts hereinafter related are taken from the testimony adduced in connection with said motions.

Despite her badly injured condition, the victim was able to give a police officer a general description of each of the robbers shortly after the event, which descriptions were relayed to other officers. Thereafter, due to her condition, she was not allowed by her physician to talk further with the officers until April 7th. According to evidence from the State, one Victor Foster became an early suspect as one of the robbers, and, upon information allegedly received from Foster, Carpenter became the prime suspect as the rapist. Carpenter was arrested on April first and detained for investigation, without any warrant being issued for his arrest. On April 6th, Carpenter was taken to Columbia for a polygraph test. Taking such was completely voluntary on his part, according to the testimony of the officers, but, according to Carpenter, taken only because he was told that was the only way he could get out. In any event, he signed a waiver. Upon the test being completed, Lt. Faulk of SLED expressed the opinion that Carpenter was not telling the truth regarding the rape and robbery. Since, however, the results of the polygraph test were inadmissible in evidence, the officers did not think they had sufficient evidence to further hold Carpenter and released him upon returning to Spartanburg that afternoon.

On the following day, April 7th, the victim's doctor gave permission for her to be seen and interviewed in the hospital. She was shown seven photographs of different men, including one of Carpenter which she picked out and identified as a photograph of the one who raped her. With this identification, the officers started looking for Carpenter again but he was not apprehended until he was taken into custody in the investigation of the robbery of a drug store on April 17, again without a warrant. No evidence was developed connecting him with the drug store robbery. On April 20th, Carpenter was picked out of a line up by Mrs. A. and again

identified as the man who raped her, he being then represented by an attorney from the Public Defender's office. Including Carpenter, there were five people in the line up.

Carpenter was represented on the trial by retained counsel but the same counsel was appointed by the court to perfect the appeal. Four questions were stated and argued in the written brief, but two of them were abandoned by counsel in the course of oral argument, so that we deal with only the remaining two contentions.

One of the contentions is that the totality of the circumstances surrounding the identification by the victim of Carpenter through both his photograph and the police line up was necessarily suggestive and conducive to irreparable mistaken identification of the defendant, thereby denying him due process of law. This contention is readily disposed of as being totally unsupported by the record. The evidence is that with respect to both the photographs shown to the victim and the other persons in the line up with Carpenter, care was used to select photographs and persons of similar age, characteristics, etc. As above mentioned, he was represented by counsel at the time of the line up. Cf. *State v. Harvey*, 253 S. C. 328, 170 S. E. (2d) 657.

Defendant's remaining contention is predicated upon his having been arrested, on both occasions, without a warrant. He seems to concede, and correctly so, that any unlawful arrest and detention would not warrant a reversal of his conviction unless such operated to deprive him of a fair trial. It is not seriously urged that the second arrest, without a warrant, on April 17th was unlawful under the facts and circumstances then existing. For the purpose of this appeal, we shall assume that the first arrest on April first was an unlawful one. The crucial question is, did such operate to deprive him of a fair trial?

He was released five days later without any charges being preferred against him and upon the trial no incriminating evidence was adduced which was obtained from or

through Carpenter during this period of incarceration. He argues, however, that but for the polygraph test which he took during this period and Lt. Faulk's opinion as to the result thereof, his photograph would never have been shown to the victim and there would have been no identifying evidence against him. This argument, or rather conclusion, on his part is simply not borne out by the record. It seems abundantly clear from all of the evidence that Carpenter would have been eventually identified had he never taken the polygraph test.

There was evidence to the effect that Victor Foster, Carpenter's alleged accomplice in the robbery, told City Detective McGowan and a SLED officer on April first, prior to Carpenter's arrest, that Carpenter was the rapist. On the trial of Carpenter, Foster, charged but not yet tried, as an accomplice in the robbery, testified, in behalf of Carpenter and denied that he had identified Carpenter as the rapist. Other evidence, as to which there is no conflict, is to the effect that Carpenter was a prime suspect from the time of his arrest on April first, and continued to be such independently of any suspicion based upon the results of the polygraph test.

The photograph of Carpenter used in identification by the victim was one on file prior to his arrest. Right after his arrest, Detective Sgt. Sawyer and Detective McGowan got this photograph from the file and selected the other six photographs which were used, trying to select subjects as similar as they could with respect to size, age, color, etc. The seven photographs were then put away under lock and key to be in readiness for use as soon as the victim was able to be interviewed. Under the foregoing facts and circumstances, the conclusion is inescapable that Carpenter's photograph would have been shown to the victim for identification purposes had he never taken the polygraph test.

We conclude that the appellant's exceptions are without merit and the judgment of the lower court is

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.